Frank I. DETWEILER, Appellant,

v.

COMMONWEALTH OF VIRGINIA DE-
PARTMENT OF REHABILITATIVE
SERVICES; Altamont Dickerson, Jr.,
and Alice B. Barker, Appellees.

No. 82–1468.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 6, 1982.

Decided April 14, 1983.

Rehearing Denied June 30, 1983.

Robert T. Copeland, Abingdon, Va. (Janet Thurston, Copeland & Molinary, Abingdon, Va., on brief), for appellant.

Dennis G. Merrill, Asst. Atty. Gen., Richmond, Va. (Gerald L. Baliles, Atty. Gen., Richmond, Va., on brief), for appellees.

Before PHILLIPS and CHAPMAN, Circuit Judges and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

Frank I. Detweiler appeals from an order of the district court dismissing his complaint for failure to state a cause of action under 42 U.S.C. §§ 1983 and 1985. Detweiler, a nonprobationary employee of the State of Virginia, alleged that he had a property interest in his continued employment; the Virginia grievance procedure pertaining to the discharge of employees does not satisfy the requirements of the due process clause of the fourteenth amendment; the state failed to follow its grievance procedure; and when he undertook to grieve his disciplinary discharge, he was unable to secure favorable witnesses because of intimidation by a state supervisor.

We conclude that Detweiler had a property interest that entitled him to the protection afforded by the due process clause, but his attack on the Virginia grievance procedure lacks merit. We also conclude that Detweiler's complaint of witness intimidation sufficiently alleged a violation of the due process clause. Accordingly, we vacate the judgment of dismissal and remand the case for further proceedings.

I

The principles applicable to controversies arising out of discharges of state employees who assert a property interest in continued employment are explained in recent decisions of the Supreme Court. The initial question is whether the employee has a property interest. In *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the Court held that property interests in continued employment "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *See also Perry v. Sindermann,* 408 U.S. 593,

601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

Whether the procedures to which an employee is entitled are delineated by the law and regulations that created his property interest or by the due process clause has divided the Court. *See Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). It appears, however, that a majority of the Court have concluded that the employee is entitled to the protection afforded by the due process clause. Justice White (concurring and dissenting) stated in *Arnett,* 416 U.S. at 185, 94 S.Ct. at 1659: "While the State may define what is and what is not property, once having defined those rights the Constitution defines due process, and as I understand it six members of the Court are in agreement on this fundamental proposition." [1]

The second issue, therefore, is what procedures are required by the due process clause when an employee, who has established a property interest in continued employment, is discharged.

## II

■ We are unable to accept the state's argument that nonprobationary employees lack a property interest in their jobs and serve at will. Section 7:10 of the Rules for the Administration of the Virginia Personnel Act provides:

Except as terms are provided by law, employment in any position held under any appointment may be terminated at any time by the transfer, demotion, layoff or removal of the incumbent by the appointing authority concerned, *under the provisions of these rules.* (emphasis added)

The successful completion of a probationary period should not be interpreted as a departure from the established standard of continued satisfactory service as the only basis for continuation in State service.[2]

The rules to which reference is made in § 7:10 include provisions assuring nonprobationary employees the right to grieve dismissals that do not result from lack of work, reduction of work force, or job abolition. These rules were promulgated by the Department of Personnel and Training pursuant to Va.Code § 2.1–114.5:1 (1982 Supp.), which directs the department to establish a grievance procedure. The statute also specifies the minimum elements of the grievance procedure. These include provisions for a nonprobationary employee to grieve a disciplinary dismissal through his agency, eventually culminating in a hearing by an impartial panel. The panel is composed of three persons who need not be state employees or officials. The panel's decision is final and binding on both the employee and the state agency which discharged him. The *Policy Standards of Conduct* set forth the offenses for which an employee may be discharged.[3] *The Rules for the Conduct of Panel Hearings* authorize the panel to remedy an unjustified discharge by reversing the agency's action and ordering reinstatement with back pay and restoration of benefits.[4]

■ These statutory and regulatory provisions and statements of policy, when read together, disclose that a nonprobationary employee does not serve at the will of the

---

1. *See also Arnett,* 416 U.S. at 166–67, 94 S.Ct. at 1650 (Powell, J., and Blackmun, J., concurring), 211 (Marshall, J., Douglas, J., and Brennan, J., dissenting).

2. We interpret this paragraph to provide that a nonprobationary employee who does not satisfy the *Policy Standards of Conduct* may be discharged for cause. In any event, he may be discharged pursuant to Va.Code § 2.1–114.5:1 B(vi) "because of lack of work, reduction in work force, or job abolition."

3. Detweiler's supervisor charged him with "failing to follow [a] supervisor's instructions, perform assigned work or otherwise comply with established written policy." Because this was Detweiler's second offense, the state's *Policy Standards of Conduct* authorized discharge.

4. While this action was pending, the statute was amended to entitle an employee to petition a state court for enforcement of the panel's decision. Va.Code § 2.1–114.5:1 F.

agency that employs him. The statute's distinction between probationary employees and nonprobationary employees, its distinction between disciplinary discharges and discharges for reduction in work force, the *Standards'* specifications of the breaches of discipline for which an employee may be discharged, and the authority conferred on an impartial panel to reverse the agency's decision and to order reinstatement with back pay establish that a nonprobationary employee has a property interest in continued employment that is created by the state. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

### III

■ Detweiler alleged that the grievance procedure is inadequate to protect his property interest in continued employment. He complains of a denial of due process in the procedure's failure to guarantee a pretermination hearing, its failure to provide for the compulsory attendance of witnesses, its failure to guarantee him an accurate transcript of the panel hearing, and its failure to provide for judicial review.

Our inquiry into the requirements of due process in this context is facilitated by *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), where the Court said:

> [I]n *Arnett v. Kennedy* . . . we sustained the validity of procedures by which a federal employee could be dismissed for cause. They included notice of the action sought, a copy of the charge, reasonable time for filing a written response, and an opportunity for an oral appearance. Following dismissal, an evidentiary hearing was provided.

The statute establishing the grievance procedure and the rules promulgated to implement it afforded Detweiler written notice of his disciplinary infractions, an opportunity to discuss the charges against him with his supervisors, and ultimately a hearing before a panel consisting of a person selected by the agency, a person selected by Detweiler, and a third person appointed by a state judge. The statute and the rules accord a grievant the right to present witnesses in his behalf and, with the assistance of counsel, to examine and cross-examine all witnesses. The rules required the panel to adhere to provisions of law and written personnel policies and to explain in writing the reasons for its decision. These procedures satisfied Detweiler's right to due process. *Arnett,* 416 U.S. at 170, 94 S.Ct. at 1652 (1974) (Powell, J., concurring); *see Mathews,* 424 U.S. at 334, 96 S.Ct. at 902 (1976).

Detweiler's claim that he was entitled to a pretermination hearing has been foreclosed by *Arnett,* 416 U.S. 134, 94 S.Ct. at 1635. There a majority of the Court, although assigning different reasons, held that a post-discharge hearing suffices. Here, as in *Arnett,* the hearing panel is authorized to order reinstatement with back pay and benefits if it finds that the discharge was unjustified. Accordingly, the Virginia grievance procedure afforded Detweiler due process by assuring him a post-discharge hearing with an adequate remedy.

Provision for compulsory process for witnesses is not an essential element of due process at an employee's grievance hearing. The federal procedure examined in *Arnett* provided that the hearing officer has discretion to request the presence of witnesses from the agency. 416 U.S. at 145–46 n. 14, 94 S.Ct. at 1640 n. 14. While the rules governing the Virginia procedure are not as explicit, we interpret *Rules for the Conduct of Panel Hearings* §§ 1 and 3 to confer similar discretion on the hearing panel.[5]

---

**5.** Sections 1 and 3 provide in part:

1. The panel shall determine the propriety of attendance at the hearing of persons not having a direct interest in the hearing.
3. The panel . . . shall afford full and equal opportunity to all parties for presentation of any material or relevant evidence and shall afford the parties the right of cross-examination.

■ While an employee such as Detweiler, who has a property interest in his position, may bring an action complaining of a lack of procedural due process, the Supreme Court has not ruled that judicial review of the substantive decision of the hearing officials is required by the due process clause. On the contrary, its decisions imply that an administrative hearing is sufficient. In *Perry,* the Court held that proof of a property interest entitled an employee to a hearing "where he could be informed of the grounds for his nonretention and challenge their sufficiency." 408 U.S. at 603, 92 S.Ct. at 2700 (1972); *accord Arnett,* 416 U.S. at 181–86, 94 S.Ct. at 1657–60 (White, J., concurring and dissenting). The due process clause does not require state courts to be the final arbiters of the merits of a disciplinary discharge.[6] *Cf. Bishop v. Wood,* 426 U.S. 341, 349–50, 96 S.Ct. 2074, 2079–80, 48 L.Ed.2d 684 (1976) (dictum). Because judicial review is not essential, there is no need, and consequently no requirement, for a transcript of the hearing. The accuracy of the transcript, therefore, is of no moment.

### IV

Detweiler also alleged that the hearing granted to him was constitutionally inadequate in two respects. First, he claims that the agency failed to follow its own rules as set forth in its *Employment Evaluation Policy* and the *Employee Standards of Conduct.* Second, he complains of witness intimidation.

■ An agency is required to comply with its regulations that are congruent with the requirements of constitutional due process. *See United States v. Caceres,* 440 U.S. 741, 749, 99 S.Ct. 1465, 1470, 59 L.Ed.2d 733 (1979). Detweiler's reliance on this principle is, however, misplaced. His allegation that he was denied due process because the state did not follow the procedures set forth in the *Employment Evaluation Policy* and the *Employee's Standards of Conduct* is in the context of this case essentially a complaint that the evidence is insufficient to sustain the panel's decision. Although Detweiler's allegation is clothed in the language of constitutional deprivation, it does not raise an issue of procedural due process. Consequently, we affirm the district court's ruling on this aspect of the case.

■ Detweiler's complaint of intimidation is of a different magnitude. Detweiler alleged:

> [He] was denied the fundamental right to secure witnesses to testify in his behalf, as at least one potentially favorable witness in fact reported to the panel that she had been instructed by her direct supervisor that it would not be in her best interest to become involved.[7]

"The fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean,* 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914). The procedure approved in *Arnett* provided a "full evidentiary hearing." Its purpose was to "minimize the risk of error in the initial removal decision." 416 U.S. at 170, 94 S.Ct. at 1652 (Powell, J., concurring). Such a hearing includes the right to present witnesses.[8] *Cf. Morrissey v. Brewer,* 408 U.S.

---

**6.** When constitutional protections other than the due process clause are invoked, judicial intervention may be appropriate to adjudicate the merits. *See, e.g., Perry,* 408 U.S. at 596–98, 92 S.Ct. at 2696–97 (1972) (first amendment).

**7.** The dissenting panel member stated:

> There is, however, one other issue which I feel compelled to address. It was brought to the attention of this panel that fear exists among some employees if they testified for the grievant in the hearing. It was also indicated that advice from an immediate supervisor was "... do not get involved." It does not seem to be within the purview of this panel to conduct a full-blown investigation of these charges, but it does appear to me that the highest ranking state officials need to be aware of the charges—especially since if the fear truly exists, the grievant could not possibly receive a fair and impartial hearing, and due process would be negated.

**8.** The Virginia grievance procedure implements this right by expressly providing that the grievant "may call upon appropriate witnesses" at

471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972).

A state official's intimidation of a prospective witness infringes the right to a hearing. Consequently, Detweiler has alleged a denial of due process of law, and his complaint should not have been dismissed. If he can prove his allegation, he should be afforded a rehearing by the panel that comports with the due process clause.

V

■ We cannot affirm the district court's ruling that Detweiler's action is barred because he did not appeal the panel's decision to a state circuit court. Section 8.01–580 of the Virginia Code, on which the district court relied, pertains to judicial review of arbitration based on the parties' written agreement. No Virginia decision or statute indicates that this section is applicable to the state employee grievance procedure. The detailed policy statements designed to acquaint both employees and officials with the grievance procedure make no reference to it. On appeal, the state expressly disavowed this defense.[9]

The judgment of the district court is affirmed in part, vacated in part, and the case is remanded for further proceedings consistent with this opinion. Detweiler shall recover his costs.

---

the panel hearing. Va.Code § 2.1–114.5:1 D(4) (1982 Supp.). The state seeks to assure this right by defining as a distinct grievance "acts of reprisal as the result of ... participation in the grievance of another state employee ..." Va.Code § 2.1–114.5:1 A(iii), see also Arnett, 416 U.S. at 145–46 n. 14, 94 S.Ct. at 1640 n. 14 (1974).

9. At argument, the assistant attorney general said:

I'd like to point out to the court that [the district court] did make a mistake with regard to the appeal to the state court. There is no appeal. He relied on § 8.01–580 which relates to arbitration, but that's obviously voluntary arbitration. This case is governed by the Personnel Act.