Jennie L. LAYNE, Plaintiff–Appellant,

v.

CAMPBELL COUNTY DEPARTMENT OF SOCIAL SERVICES; Cilla P. Brown; Judith E. Gilchrist, Defendants–Appellees,

and

County of Campbell, Defendant.

No. 90–2623.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 6, 1991.

Decided July 25, 1991.

As Amended Aug. 12, 1991.

Terry N. Grimes, King, Fulghum, Snead, Nixon & Grimes, P.C., Roanoke, Va., for plaintiff-appellant.

William Sampson Kerr, Appomattox, Va., argued (Thomas S. Leebrick, Mosby, Jester & Leebrick, Lynchburg, Va., on the brief), for defendants-appellees.

Before HALL and MURNAGHAN, Circuit Judges, and SMITH, District Judge for the Eastern District of Virginia, sitting by designation.

OPINION

REBECCA BEACH SMITH, District Judge:

Jennie L. Layne ("Layne") brought this suit in federal court, pursuant to 42 U.S.C. § 1983, against her former employer, Campbell County Department of Social Ser-

vices ("the Department"), and two of its employees in both their individual and official capacities: Cilla P. Brown ("Brown"), Director, and Judith E. Gilchrist ("Gilchrist"), Layne's supervisor at the time of her termination.[1] These defendants allegedly violated Layne's rights to due process of law and freedom of speech, as secured by the United States and Virginia Constitutions, and breached her employment contract. The district court granted defendants' motion to dismiss with respect to all federal claims and declined to exercise jurisdiction over the pendent state law claims. Finding no reversible error, we affirm.

## I.

Layne began employment with the Department in 1973. She filed an Equal Employment Opportunity ("EEO") complaint in August, 1986, claiming discrimination by the Department. For the three years prior to August, 1986, she received satisfactory job evaluations. Following the filing of the EEO complaint, she received three unsatisfactory evaluations, covering the period of July 1, 1986, through October 23, 1987.[2] Layne claims these last three evaluations were made arbitrarily and in bad faith, in order to create a paper trail to justify her termination.

On November 6, 1987, Gilchrist sent Layne written notice of her termination, effective that day. Also on November 6, 1987, Brown sent Layne a memorandum informing her that she was fired for making a coercive statement to her supervisor on August 26, 1987, and because of "the cumulative nature of [her] unsatisfactory employment record." App. at 9. At the time of the termination, Layne allegedly had achieved permanent employment status and so could be terminated only for cause.[3]

Layne filed a written grievance contesting her termination, pursuant to the Campbell County Grievance Procedure ("CCGP"). On May 30, 1988, and June 21, 1988, a three-member administrative panel heard her grievance and unanimously refused to reinstate her. Layne then filed this action, claiming that defendants deprived her of a valuable property right without due process of law and abridged her right to freedom of speech, in violation of the United States and Virginia Constitutions, and breached her employment contract.

The district court found no violation of Layne's right to procedural due process and, therefore, held that it was precluded from making further factual findings different from those of the administrative panel which heard her grievance. The court also found that Layne's substantive due process and first amendment rights had not been violated. Consequently, the court granted defendants' motion to dismiss and declined to exercise jurisdiction over the pendent state law claims.

Layne raises two issues on appeal. First, she argues that the decision of the state administrative panel concerning her termination does not preclude her from litigating this action in federal court, pursuant to 42 U.S.C. § 1983, because the CCGP failed to provide her an adequate opportunity to litigate her grievance.[4] Second, she

---

1. County of Campbell also was named as a defendant, but was dismissed from this action before trial.

2. Layne was evaluated on a nine point scale, nine being the highest ranking. Any score below "4" is less than satisfactory. Brown's annual evaluations of Layne (July 1 through June 30) were an overall score of 5.2 for 1983–84, 4.43 for 1984–85, and 5.48 for 1985–86. Evaluations of Layne after the EEO complaint was filed included an overall score of 3.48 for July 1, 1986, through September 30, 1986, assessed by Brown; 3.86 for July 1, 1986, through June 30, 1987, assessed by Gilchrist; and 3.4 for July 1, 1987, through October 23, 1987, assessed by Gilchrist.

3. According to Layne, the employment manual adopted by the Department provided that employees who have acquired permanent status shall not be terminated except for cause. Defendants concede that Layne could be discharged only for cause, and thus she had a right to due process in her termination.

4. In essence, Layne argues that the CCGP is constitutionally defective, in that it deprives the grievant of due process. If so, federal courts would not be bound by the grievance panel's findings of fact. See infra at 218–19.

asserts that her action against Brown and Gilchrist in their individual capacities should proceed because neither Brown nor Gilchrist were parties to the administrative hearing.

## II.

■ The CCGP is a three-step procedure for processing a grievance, the final step of which is a hearing before an administrative panel.[5] At the panel hearing, each party has the opportunity to call witnesses and offer evidence. Although the panel's decision is final, either party may petition the state circuit court for implementation of the panel decision. The CCGP complies with the statutory requirements of the grievance procedure for state employees in Virginia mandated by Va.Code Ann. § 2.1–114.5:1 (1987) (amended 1988, 1989, 1990, 1991).[6]

■ In *University of Tenn. v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), the Supreme Court, in the context of a claim under 42 U.S.C. § 1983, established the following test for determining when a federal court can review the factfinding of a state administrative agency:

> [W]hen a state agency "acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate," federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts.

*Id.* at 799, 106 S.Ct. at 3226 (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966)) (footnote omitted).[7]

In the case at bar, all parties agree that the administrative panel acted in a judicial capacity and resolved disputed issues of fact properly before it. Virginia courts are precluded, by the grievance procedure, from reviewing the panel's factfinding. Therefore, if the CCGP provides an adequate opportunity to litigate, then the district court was correct in holding that it was precluded from making any further factual findings. Layne maintains that the CCGP does not afford an adequate opportunity to litigate; consequently, she asserts that she was deprived of her property interest in continued employment without due process of law.[8] Hence, according to Layne, a federal court is not precluded from reviewing the panel's decision.

Layne argues that an adequate opportunity to litigate must include the opportunity for court review of adverse agency findings. She supports that position with the following statement: "[I]t is clear that an 'adequate opportunity to litigate' includes giving both parties 'a full and fair opportu-

---

5. The three steps are a discussion between the grievant and his or her immediate work supervisor, the filing of a written grievance with the grievant's department head or state constitutional officer, as appropriate, and the administrative panel hearing.

   The grievance panel consists of three members chosen from a standing panel appointed by the Campbell County Board of Supervisors. One member is selected by the department head, one by the grievant, and the third by the two appointees, or by the state circuit court, if requested. In order to insure an impartial panel, no person having any direct connection to the grievance or the dispute from which it arises, or anyone in a supervisory capacity over the grievant, or any relatives of any of the participants in the grievance process, may serve on the panel.

6. The 1987 version of this Virginia Code section is applicable because it was in effect at the time Layne's grievance was filed and heard. However, none of the subsequent changes affect Layne's case and the outcome would be the same under the current version of the statute.

7. In *University of Tennessee*, the Court considered whether the finding of a state administrative law judge was entitled to preclusive effect in federal court, when discrimination claims had been raised under Title VII and the Reconstruction civil rights statutes (42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988). The Court applied this preclusive effect test to the claims asserted under the Reconstruction civil rights statutes, but not to the Title VII claim because of the language and legislative history of Title VII. *See University of Tenn.*, 478 U.S. at 794–99, 106 S.Ct. at 3223–27. Since the instant action was brought pursuant to 42 U.S.C. § 1983, we need not address the application of this test in contexts other than the Reconstruction civil rights statutes.

8. Layne does not allege inapplicability of the CCGP to her case or any deviation from the CCGP in the processing of her grievance.

nity to argue their version of the facts and an opportunity to seek court review of any adverse findings.' " *Bradley v. Carydale Enterps.*, 710 F.Supp. 1063, 1067 (E.D.Va. 1989) (quoting *Utah Constr. & Mining Co.*, 384 U.S. at 422, 86 S.Ct. at 1560) (footnote omitted).

Layne's argument is misplaced. First, she relies on *Bradley* out of context. *Bradley* was a federal housing discrimination suit in which the court held that the findings of a state agency and a local commission were not entitled to res judicata effect in federal court because "[n]either body acted in a genuine judicial capacity, nor did it appear that state courts would accord preclusive effect to the Board's or Commission's findings." *Bradley*, 710 F.Supp. at 1069.[9]

Second, *Bradley* has quoted *Utah Construction* out of context.[10] In *Utah Construction*, the Court listed the opportunity to seek court review as one of the facts of that particular case. 384 U.S. at 422, 86 S.Ct. at 1560. The Court did not say that in order to have an adequate opportunity to litigate, a party must have the opportunity to seek court review of adverse findings.

*See id.*[11] Importantly, when the Supreme Court relied upon *Utah Construction* in the later case of *University of Tennessee*, it quoted as controlling the general principle of *Utah Construction*, but made no mention of an opportunity to seek court review of adverse findings as an essential component of that principle. 478 U.S. at 799, 106 S.Ct. at 3226 (quoting 384 U.S. at 422, 86 S.Ct. at 1560); *see supra* at 218–19.[12]

Finally, if the opportunity for state court review of adverse agency findings was always required in order to comport with due process, then the principle of *University of Tennessee* would be analytically and practically meaningless. In other words, if an opportunity for state court review of agency findings is mandated, then there is no preclusive effect of agency findings in state courts and, therefore, none required in federal courts under *University of Tennessee*. Conversely, if the absence of an opportunity for state court review means that the *University of Tennessee* test is not satisfied, then federal courts are not required to give preclusive effect to a state agency's factfinding. Under Layne's argu-

**9.** Moreover, the *Bradley* decision makes no reference to this court's decision in *Detweiler v. Commonwealth of Va. Dep't of Rehabilitative Servs.*, 705 F.2d 557 (4th Cir.1983). *See infra* at 219.

**10.** *Utah Construction* was a breach of contract suit brought by Utah Construction & Mining Company against the United States. The Court determined that finality of a federal agency's factfinding was required by the contract provisions, the applicable federal statute, and general principles of collateral estoppel. 384 U.S. at 418–19, 86 S.Ct. at 1558. The Court in *University of Tennessee* then extended this holding of finality accorded a federal agency's factfinding to preclude, in certain circumstances, the relitigation of a state agency's factfinding. *See infra* note 12.

**11.** The Court regarded the opportunity to seek court review as a fact which demonstrated either that the agency was acting in a judicial capacity or that the parties had an adequate opportunity to litigate. *Utah Constr. & Mining Co.*, 384 U.S. at 422, 86 S.Ct. at 1560. Frankly, it is not clear which of these two meanings the Court intended, because the sentence modifier "when" can be read to give both interpretations. However, it is clear in stating that the parties had an opportunity to seek court review of

adverse findings, the Court was referring to the facts "[i]n the present case...." *Id.*

**12.** In *University of Tennessee,* the Supreme Court relied on the general principle of *Utah Construction*—federal courts can properly apply principles of collateral estoppel to the findings of an administrative agency, if the agency was acting in a judicial capacity resolving disputed issues of fact properly before it which the parties had an adequate opportunity to litigate. The *University of Tennessee* decision was not based on the way this general principle was applied to the specific facts in *Utah Construction*. *See supra* note 11. Instead, the Court looked to its holding in *Utah Construction* as a "recogni[tion] that it is sound policy to apply principles of issue preclusion to the factfinding of administrative bodies acting in a judicial capacity." *University of Tenn.*, 478 U.S. at 797, 106 S.Ct. at 3225.

The *Utah Construction* principle was extended in *University of Tennessee* to require federal courts to give the factfinding of state administrative agencies the same preclusive effect to which it would be entitled in state court, when the other requirements of the test are met, thereby serving the value of federalism. 478 U.S. at 798, 106 S.Ct. at 3226.

ment, then, there never would be a situation in which federal courts were required to give an agency's factfinding preclusive effect. Clearly, that is not what was contemplated by the Court in *University of Tennessee.*[13]

Seventeen years after *Utah Construction* was decided, and three years before *University of Tennessee,* this court concluded: "[T]he Supreme Court has not ruled that judicial review of the substantive decision of the hearing officials is required by the due process clause. On the contrary, its decisions imply that an administrative hearing is sufficient." *Detweiler v. Commonwealth of Va. Dep't of Rehabilitative Servs.,* 705 F.2d 557, 561 (4th Cir. 1983) (citing *Bishop v. Wood,* 426 U.S. 341, 349–50, 96 S.Ct. 2074, 2079–80, 48 L.Ed.2d 684 (1976) (dictum); *Arnett v. Kennedy,* 416 U.S. 134, 181–86, 94 S.Ct. 1633, 1657–60, 40 L.Ed.2d 15 (1974); *Perry v. Sindermann,* 408 U.S. 593, 603, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972)). The Supreme Court in *University of Tennessee* confirmed this implication that an administrative hearing alone may be sufficient.

In *Detweiler,* this court held that the Virginia grievance procedure satisfies an employee's right to procedural due process, even though it fails to provide an opportunity for judicial review of the panel's decision. 705 F.2d at 560–61; *see also Davis v. Pak,* 856 F.2d 648, 652 (4th Cir.1988) (citing with approval the holding of *Detweiler*). "The due process clause does not require state courts to be the final arbiters of the merits of a disciplinary discharge.... [J]udicial review is not essential...." *Detweiler,* 705 F.2d at 561 (footnote omitted) (citation omitted).

Finally, the CCGP does allow for court review on questions of law. If the administrative head of the agency determines that

a complaint is not grievable, the grievant may appeal that decision to the state circuit court for a hearing *de novo,* as provided for in Va.Code Ann. § 2.1–114.5:1(E). CCGP at 2. In addition, if the panel members chosen by the grievant and the department head cannot agree on the selection of the third member, the parties may request that the state circuit court appoint the third panel member. Va.Code Ann. § 2.1–114.5:1(D); CCGP at 4.[14] Either party may petition the state circuit court for implementation of the panel decision, pursuant to Va.Code Ann. § 2.1–114.5:1(F). CCGP at 5. The panel's decision is final and binding, but it must be consistent with law and written policies. Va.Code Ann. § 2.1–114.5:1(D); CCGP at 6.

Layne does not allege any errors of law. A federal court does not have the authority to review the factfinding of the administrative panel merely because Layne is dissatisfied with the results. Since the administrative panel was acting in a judicial capacity, resolving issues of fact properly before it which the parties had an adequate opportunity to litigate, the district court was correct in holding it was precluded from reviewing the panel's findings of fact, the same as a Virginia court would be precluded. Thus, Layne received the process due her.

### III.

As counsel for appellant admitted during oral argument, if Layne was not deprived of procedural due process, then no federal claims remain against Brown and Gilchrist as individuals. Specifically, if we affirm the district court's finding that Layne received the process due her, then we must accept the facts as found by the administrative panel. Therefore, we recognize that Layne was terminated for cause. All

**13.** That is not to say in every case federal courts are precluded from reviewing a state agency's factfinding. Rather, federal courts are only required to give the same preclusive effect to the agency's factfinding as would be given it by the state courts, and in some instances, state court review may be available. Also, if the other requirements of the *University of Tennessee* test are not satisfied (i.e., agency acting in a judicial

capacity resolving disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate), federal courts are not required to give preclusive effect to the state agency's factfinding.

**14.** The third member serves as chairman of the panel. Va.Code Ann. § 2.1–114.5:1(D); CCGP at 4.

of her other claims then fail, because they are all factually premised upon a wrongful discharge. Accordingly, Layne has no cognizable claims, pursuant to 42 U.S.C. § 1983, against Brown or Gilchrist in their individual capacities.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.