**Ronny J. GOLDSMITH, Plaintiff–Appellant,**

v.

**MAYOR & CITY COUNCIL OF BALTIMORE; Wilbur E. Cunningham, Fred Morris Lauer, Jr.; Harry Loleas, Defendants–Appellees.**

No. 87–1084.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 5, 1987.

Decided Jan. 19, 1988.

Howard J. Schulman, Baltimore, Md., for plaintiff-appellant.

J. Shawn Alcarese, Sp. Sol., City of Baltimore Dept. of Law (Benjamin L. Brown, City Sol., Baltimore, Md., on brief), for defendants-appellees.

Before HALL and ERVIN, Circuit Judges, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.

ERVIN, Circuit Judge:

Ronny J. Goldsmith alleged in her second amended complaint that Baltimore City Ordinance Number 625, effective March 12, 1986, which abolished the Baltimore City Council Office of Financial Review, was enacted for the purpose of removing her as Director of that agency without due process in violation of 42 U.S.C. § 1983. Ms. Goldsmith argues that the ordinance was enacted because she provided information to the media and others concerning improprieties and irregularities in municipal fiscal matters. The trial court entered summary judgment in favor of the defendants on due process, constructive discharge, and tortious interference with contract [1] claims and dismissed without prejudice the remaining counts of the complaint. Because we believe that the district court was without subject matter jurisdiction, we reverse the summary judgment decision and remand the case for dismissal of Goldsmith's claims without prejudice.

## I.

The budget of the City of Baltimore is, by charter, prepared each year by the executive branch of the government and is then submitted to the City Council for approval. Historically, the City Council found itself under a severe handicap in the study of the executive budget and unable to evaluate the proposed expenditures and projected revenues. On July 6, 1960 the Sherbow Commission addressed these concerns and issued a report which recommended that a fiscal research bureau be created so that City Council members could enlist the aid of experts in evaluating the budget they must ratify.

The report recommended that the Director of such a bureau be responsible solely to the City Council. The Directorship was designed to be essentially an apolitical position. As a result, the director was to be appointed by an independent board from a list of names certified to that board by the Civil Service Commission. The Director would serve during good behavior, subject to removal only after charges were preferred by the City Council and a full hearing held before the Civil Service Commission. Discharge was proper only upon proof of inefficiency, neglect of duty or misconduct in office. The recommendations of the Commission were codified in

---

1. Jurisdiction over the tortious interference with contract claims is invoked pursuant to 28 U.S.C. § 1332 and is not affected by the discussion following. However, the trial court correctly ruled that there was no basis for diversity jurisdiction because the appellant's move to California occurred after initiating her suit. *See, e.g.,* C. Wright, A. Miller, and E. Cooper, *Federal Practice and Procedure* at 3608 (1984) and cases cited therein. As a result, we remand for dismissal the tortious interference with contract claim found in count three.

Baltimore City Ordinance 904, which was enacted in 1961. Article I, § 7 *et seq.* Baltimore City Code (1983). This municipal legislation created a City Council Office of Financial Review.

Ronny Goldsmith, a government finance and public policy expert, was selected as the Director of the Office of Financial Review on April 1, 1980. Goldsmith's duties included analyzing the city budget and studying municipal fiscal problems, procedures and practices in order to make recommendations to the City Council. Her analyses led directly and indirectly to the disclosure of millions of dollars of misappropriated, mismanaged and "off-budget" funds in violation of the Baltimore City Charter and federal and state laws. Her work was frequently reported in the press.

On September 30, 1985, City Council Bill 1009 was introduced. The bill was designed to abolish the Office of Financial Review, and create in its stead the Office of Councilmanic Services. All personnel of the Office of Financial Review, except for the director, were to be transferred to Councilmanic Services. The Office of Councilmanic Services was to operate under the direction of an oversight committee composed of persons designated by the President of the City Council, who was to chair the oversight committee. The bill received significant media attention, and was the object of much opprobrium in the local news media. The bill was amended on February 4, 1986, to grandfather Goldsmith into the Director's office of the new agency. The Director no longer had tenure. She could be removed by a majority vote of the oversight committee, subject to the approval of a City Council majority.

On February 18, 1986, the amended Bill 1009 was approved by the City Council. The bill was signed by the Mayor on March 12, 1986, effective that date as Ordinance No. 625, as codified in Article I, § 7 *et seq.* Baltimore City Code. Ms. Goldsmith argues that the Ordinance was approved because of her conflicts with City Council members and her subordinates who had influence with those Council members. The City argues that the new agency was

created because the 1961 legislation became inadequate to address the needs of the City Council for staff support. We need not reach the merits of this dispute because we hold that this court, as well as the district court, lacks subject matter jurisdiction over the claims presented.

## II.

 Goldsmith brings this action under 42 U.S.C. section 1983, which provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

Section 1983 does embrace Goldsmith's claims that Ordinance Number 625 enacted by the City Council and Mayor of Baltimore deprives her of a right "secured by the Constitution and laws," to wit, due process protection before discharge from employment. However, the federal cause of action created by this section does not itself confer jurisdiction upon the federal district courts to adjudicate these claims. To establish jurisdiction, Goldsmith relied primarily on 28 U.S.C. § 1343(a)(3):

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

\* \* \* \* \* \*

(3) to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

This court has explained that "Federal courts are courts of limited jurisdiction and are empowered to act only in those specific instances authorized by Congress. The

burden is on the party asserting the jurisdiction of the court to show that jurisdiction does, in fact, exist." *Bowman v. White*, 388 F.2d 756 (4th Cir.1968). See also *Fairfax Countywide Citizens v. Fairfax County*, 571 F.2d 2299 (4th Cir.1978) and 1 J. Moore, J. Lucas, H. Fink, D. Wechstein, & J. Wicker, Moore's Federal Practice ¶ 0.60[3] (2d ed. 1986). The mere existence of a disputed issue of federal law does not confer federal question jurisdiction. *McCorkle v. First Pennsylvania Banking and Trust Co.*, 459 F.2d 243 (4th Cir.1972) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936)). The parties' failure to address the jurisdictional issue does not preclude our consideration. A federal court must satisfy itself that it has jurisdictional power to rule on the merits of a case. *Johnson v. Town of Elizabethtown*, 800 F.2d 404, 407 n. 2 (4th Cir. 1986) and *Cook v. Georgetown Steel Corp.*, 770 F.2d 1272, 1274 (4th Cir.1985). Because we believe that Goldsmith's complaint failed to raise a substantial federal question, we conclude that the district court lacked subject matter jurisdiction necessary to decide this case.

█ In *Hagans v. Lavine*, 415 U.S. 528, 536–37, 94 S.Ct. 1372, 1378–79, 39 L.Ed.2d 577 (1974), where a plaintiff asserted jurisdiction under section 1343(a)(3), the Supreme Court explained the substantiality doctrine in these terms:

> Over the years this Court has repeatedly held that the federal courts are without power to entertain claims otherwise within their jurisdiction if they are so attenuated and unsubstantial as to be absolutely devoid of merit.
>
> \* \* \* \* \* \*
>
> [T]he question may be plainly unsubstantial either, because it is obviously without merit or because its unsoundness so clearly results from the previous decisions of this Court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy. (Citations omitted).

The *Hagans* court ultimately concluded that the plaintiff's claims were not too insubstantial for consideration because it could not conclude that the plaintiff's claims were patently irrational, nor could it find cases dealing specifically with the relevant regulation and settling the issue. 415 U.S. at 539, 94 S.Ct. at 1380.

This court applied the substantiality doctrine as formulated in *Hagans*, in *Eastern Band of Cherokee Indians v. Donovan*, 739 F.2d 153, 159 (4th Cir.1984). The Tribe claimed that actions of the Department of Labor deprived the Tribe of due process and equal protection of the laws by forcing the Tribe to waive available defenses and its right to a hearing. This court ruled that the Tribe's claims had been foreclosed by prior case law which had settled its claim in this circuit. *See Crosby by Crosby v. Holsinger*, 816 F.2d 162, 163 (4th Cir. 1987) ("[A] claim is insubstantial only if 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy.' ") As a result, the Tribe's claims did not merit meaningful consideration and the district court was without jurisdiction to entertain them. 739 F.2d at 159. We find ourselves constrained to reach a similar result in this case.

In the present case, Goldsmith claims that the Mayor and City Council of Baltimore denied her due process by enacting Ordinance Number 625, which abolished the Office of Financial Review and deprived her of tenure benefits as Director of that office. The same ordinance grandfathered Goldsmith into office as Director of the Office of Councilmanic Services; her duties and responsibilities, and her benefits and remuneration did not change. It is a well-established principle that "the legislative power of a State except so far as restrained by its own constitution, is at all times absolute with respect to all offices within its reach. It may at pleasure create or abolish them, or modify their duties. It may also shorten or lengthen the term of service." *Higginbotham v. Baton Rouge*, 306 U.S. 535, 538, 59 S.Ct. 705, 706, 83 L.Ed. 968, *rehearing denied*, 307 U.S. 649,

59 S.Ct. 831, 83 L.Ed. 1529 (1939). *See also Newton v. Mahoning County,* 100 U.S. (10 Otto) 548, 557, 25 L.Ed. 710, 711 (1880); *Butler v. Pennsylvania,* 10 How. 402, 13 L.Ed. 472; *Crenshaw v. United States,* 134 U.S. 99, 106, 10 S.Ct. 431, 433, 33 L.Ed. 825, 828 (1890); *Phelps v. Board of Education,* 300 U.S. 319, 322, 57 S.Ct. 483, 484, 81 L.Ed. 674, 676 (1937); *Dodge v. Board of Education,* 302 U.S. 74, 78, 58 S.Ct. 98, 100, 82 L.Ed. 57, 61, 62 (1937).

The court deciding *Higginbotham* confronted a case very similar to that presented here. In that case, the City of Baton Rouge operated under a commission form of government. The authority of the Commission Council was divided among three departments; Public Health and Safety, Finance, and Public Parks and Streets. In 1934, the legislature abolished the office of Commissioner of Public Parks and Streets and transferred its functions to the Mayor. A proviso in the legislation entitled the former Commissioner of Public Parks and Streets, Higginbotham, to be employed by the city at a salary equal to his Commission salary, and he could continue to serve the Mayor during good behavior. In 1935, the Commission Council adopted these changes and Higginbotham accepted his employment. Rejecting a contract clause challenge to the legislation, the Supreme Court said "that a municipal council may remove at any time any official appointed or elected by the Council, or anyone employed by the Council to perform governmental functions." 306 U.S. 538. The power of the

Baltimore City Council to abolish the Office of Financial Review is so well-established as to merit notation in the legal encyclopedias. *See e.g.* 63A Am.Jur.2d *Public Officers and Employees* § 31 (1984)[2]; Annotation, *Power to Abolish or Discontinue Office,* 4 A.L.R. 205 (1919); and Annotation, *Power to Abolish or Discontinue Office,* 37 A.L.R. 815 (1925). These authorities belie Goldsmith's claim to a property right in the continued existence of her position.

Approached from any angle, this case merely presents a conflict between a public officer and the city council which created her position. The Supreme Court has ruled time and time again that, under the federal constitution, a legislative body, including municipal councils, has the unfettered authority to create, alter and abolish such positions. As a result, the actions of the defendants in enacting Ordinance Number 625 do not amount to a constitutional deprivation. Because Goldsmith did not raise a substantial federal question, the district court was without jurisdiction to enter a summary judgment in favor of the Mayor and City Council. We reverse the summary judgment and remand this case to the district court for dismissal of the remaining claims without prejudice.

REVERSED AND REMANDED.

---

**2.** 63A. Am.Jur.2d *Public Officers and Employees* § 31 reads in full:

§ 31. Generally.

The power to create an office generally includes the power to modify or abolish it. Where the office is of legislative creation, the legislature may, unless prohibited by the constitution, control, modify, or abolish it whenever such course may seem necessary, expedient, or conducive to the public good. The power extends to the consolidation of offices, resulting in abolishing one and attaching its powers and duties to another. The legislature may change the duties or tenure of officers, and the fact that an officer is appointed during "good behavior", removal for cause, does not alter this result. Even as to such offices, however, the circumstances may create an exception, as where the legislature makes a contract with the officer at a stipulated salary for his services during a specified period. Congress may, within constitutional limitation, abolish offices created by it, or offices in territory ceded to the United States by a foreign power.

Public offices are created to meet the needs of the people, and when such need ceases to exist, there is no obligation or necessity to continue a useless office. The determination that a position should be abolished for reasons of efficiency and economy is solely within the judgment and discretion of the governing authority in whom the power to eliminate the office is vested. It has been said that the courts have long recognized that the elimination or discontinuance of a position to promote efficiency or economy is a valid exercise of legislative authority. (Citations omitted).