OWENS–ILLINOIS, INC., Plaintiff,

v.

The Honorable Marshall A. LEVIN, in his official capacity as Judge for the Maryland Circuit Court for Baltimore City, Defendant,

and

Mary Abate, Personal Representative and Surviving Spouse of John Abate and 8,554—Similarly Situated Persons, Intervenor–Defendant.

Civ. No. N–92–399.

United States District Court, D. Maryland.

Feb. 19, 1992.

---

**21.**  The Second Restatement of the Law of Contracts, §§ 345(e), 366 Illustration 3 and the Restatement of Judgments, § 84 deal with preclusive and other effects of awards by arbitrators. Neither speaks with regard to court review of such awards.  But the approach in the Restatements suggests that the respect, which is accorded to such awards by the FAA and by the case law in jurisdictions other than the Virgin Islands, in connection with court review of arbitrators' awards, should be accorded in a case such as this one if common-law principles apply.  In that regard, the importance accorded to the Restatement in the Virgin Islands is to be noted.  *See* V.I.Code Ann. tit. 1 § 4.

James D. Miller, J. Sedwick Soller, III, and King and Spalding, Washington, D.C., R. Bruce Shaw, Colombia, S.C., for plaintiff.

Carmen Shepard and Office of Atty. Gen., Baltimore, Md., for defendant.

Peter G. Angelos, Patricia J. Kasputys, Baltimore, Md., and Ronald L. Motley, Charleston, S.C., for intervenor-defendant.

## MEMORANDUM

NORTHROP, Senior District Judge.

Pending before this Court is Plaintiff's Motion for a Preliminary Injunction. Defendant, through the Attorney General for the State of Maryland opposes Plaintiff's Motion. After consideration of the arguments made by the parties at this hearing and in their pleadings, this Court denies Plaintiff's Motion for a Preliminary Injunction.

### I. *Legal Analysis*

#### A. Legal Standard for Preliminary Injunction

In order to obtain a preliminary injunction under Fed.R.Civ.P. 65 the plaintiffs must demonstrate:

1. the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied;

2. the likelihood of harm to the defendant if the requested relief is granted;

3. the likelihood that the plaintiff will succeed on the merits; and

4. the public interest.

*Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189, 193–96 (4th Cir.1977); *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353 (4th Cir.1991); *L.J. v. Massinga*, 838 F.2d 118 (4th Cir.1988), *cert. denied*, 488 U.S. 1018, 109 S.Ct. 816, 102 L.Ed.2d 805 (1989). Interlocutory injunctive relief should be evaluated upon a "flexible interplay" of the four factors. *Maryland Undercoating Co.*, 603 F.2d 477, 481 (4th Cir.1979).

In determining what relative emphasis to give these elements, the *Blackwelder* court stated:

The two more important factors are those of probable irreparable injury to plaintiff without a decree and of likely harm to the defendant with a decree. If that balance is struck in favor of plaintiff, it is enough that grave or serious questions are presented; and plaintiff need not show a likelihood of success.

*Blackwelder Furniture Co.*, 550 F.2d at 196. If, however, the balance is struck in favor of the defendant, the likelihood of success becomes a more significant factor. "The importance of probability of success increases as the probability of irreparable injury diminishes." *Id.* at 195.

#### B. The Balance of Hardships

Owens–Illinois, the Plaintiff in this case, must demonstrate that it will sustain irreparable harm without a preliminary injunction. *Rumcreek Coal Sales, Inc. v. Capperton*, 926 F.2d 353, 360 (4th Cir.1991). Plaintiff maintains that proceeding with the consolidated trial will cause them irreparable harm. Plaintiff foists the specter of massive litigation costs as the irreparable harm Owens–Illinois will suffer if Judge Levin is allowed to proceed.

■ The Court does not recognize litigation costs as irreparable harm. *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974). This rule makes sense. If litigation costs could be considered irreparable harm, then any time a suit is brought, someone would have grounds for an injunction merely because of the cost of the litigation.

■ Plaintiff argues in this case, however, that a favorable outcome for Owens–Illinois, at the state court level, will not bind the state court plaintiffs. However, an unfavorable outcome for Owens–Illinois will be binding on them. This is false. First, Owens–Illinois is free to appeal the decision at the state court level. If Owens–Illinois is still dissatisfied with the result, after exhausting all state court appeals, then the Plaintiff can take its case to the Supreme Court. Second, if the injunction were granted, it is difficult to see how Owens–Illinois would save litigation expenses, trying over 9,000 separate cases as opposed to the six that Judge Levin proposes.

It is also more than a little curious why Owens–Illinois waited until one week before the scheduled state court trial to vindicate their Constitutional rights from this so-called irreparable harm. This case has been pending for years, if the state court proceedings were causing irreparable harm Plaintiff should have and could have filed sooner.

The balance of hardships favors the State. *See Direx Israel v. Breakthrough Medical Corp.*, 952 F.2d 802 (4th Cir.1991). Although Owens–Illinois will suffer no legally recognized harm if the injunction is denied, the State will suffer severe harm if the injunction is granted. Almost five years ago the Circuit Court began managing the massive number of asbestos cases pending in State court. The 9,000 pending cases created a tremendous backlog, that easily exceeded the capacity of the state judiciary. As the Baltimore Circuit Court noted, "the trial queue [for these cases] would realistically be over 100 years, ..."

Certainly, this is the essence of the statement "Justice delayed is justice denied."

Faced with this situation Maryland decided to explore ways of consolidating the common issues. After extensive briefing by all parties, the Circuit Court Ordered this consolidated procedure.

The authority to construct and carry out the trial plan Judge Levin is attempting is clearly an important state interest. At stake here is the ability of the Circuit Court to manage its docket, an essential function of any judicial system. If the preliminary injunction is granted this interest will be jeopardized. Owens–Illinois has had—and will continue to have—its day in court. But if the injunction is granted, however, Owens–Illinois will effectively bar the court house doors for others who may, as the State court noted, have to wait a century for their relief. Clearly the balance of hardships weighs in favor of the state.

## C. Plaintiff's Likelihood of Success on the Merits

Owens–Illinois maintains that its due process rights will be violated because, in consolidating the cases, the State Court seeks to achieve a judgment that will bind thousands of absent individuals without certifying a class. Plaintiff claims that it will be forced to relitigate time and again the identical issues central to this action, because a judgment in its favor will not be binding on the state court asbestos plaintiffs but only on Owens–Illinois.

As an aside, Owens–Illinois has had ample opportunity to present its Constitutional claims against this consolidation procedure in the State Court. Further, Owens–Illinois could continue that challenge in the State Court instead of running to another forum like a child hoping to play one parent off against the other. Other Defendants, for example, have filed a Petition for Writ of Mandamus seeking appropriate relief in the Court of Appeals of Maryland.

As part of the consideration of the merits of Plaintiff's claim this Court needs to examine whether it has the jurisdiction to entertain Owens–Illinois' claim. Federal courts are of limited jurisdiction, and the

party seeking jurisdiction has the burden of showing that it exists. *Goldsmith v. Mayor and City Council of Baltimore,* 845 F.2d 61, 63–64 (4th Cir.1988). In this case, Plaintiff asserts jurisdiction under 28 U.S.C. § 1343. Plaintiff's argument in favor of this Court exercising jurisdiction is shaky at best.

On the eve of trial Plaintiff seeks to thwart Maryland State court justice by appealing to a federal vanity. Plaintiff hopes that the hubris of a federal government that mistakenly believes, at times, that it is the only arbiter of constitutional rights, will override well established principles of comity and federalism. But as the Supreme Court stated over twenty years ago, "the entire country is made up as a union of separate state governments, and a continuance of the belief that the National Government will fare better if the states and their institutions are left free to perform their separate functions in their separate ways." *Younger v. Harris,* 401 U.S. 37, 43, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971).

Plaintiff is unlikely to succeed on the merits because established principles of federalism require a respect for state court judicial proceedings that is articulated in the abstention doctrine. Plaintiff cites authority that purports to demonstrate that the so-called "civil Younger" doctrine should not apply to the instant case. Plaintiff claims that *Younger* only applies to the few types of civil proceedings that implicate important state interests.

Here Plaintiff maintains that important state interests are not involved because: (1) the state is not a party to the asbestos cases; and (2) the procedures Judge Levin plans to employ do not protect the power or authority of Maryland courts. I disagree.

The Supreme Court recognizes that Federal Courts should not enjoin State courts where the Plaintiff has an adequate remedy in State Court. *Pennzoil v. Texaco,* 481 U.S. 1, 11, 107 S.Ct. 1519, 1526, 95 L.Ed.2d 1 (1987) (*Younger* abstention applies in pending civil proceedings "if the State's interests in the proceeding are so important that exercise of Federal judicial power would disregard the comity between the states and the national government."). Here, as in *Pennzoil,* the state was not a party. Here, as in *Pennzoil,* the underlying action was a private tort case. But in this case it is 9,000 cases, not just one. Here, as in *Pennzoil,* the case involved a State Court's power to regulate its litigation effectively, and maintain control over its litigants. For it is not simply the outcome of one trial that Plaintiff challenges, but the state court's authority to resolve certain issues through consolidation that is being challenged.

It is possible that the entire issue will be resolved without resort to the constitutional issue. In that case the expenditure of federal judicial resources will have been wasted. *See Texas v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

In a case closer to home, this Court abstained from adjudicating a claim arising from the collapse of the savings and loan associations in Maryland. *Brandenburg v. First Maryland Savings and Loan, Inc.,* 660 F.Supp. 717 (D.Md.1987), *aff'd,* 859 F.2d 1179 (4th Cir.1988). As in the instant case, the Baltimore City Circuit Court consolidated cases. As Judge Smalkin wrote and to which I subscribe wholeheartedly, we cannot "conceive of a situation in which the exercise of federal jurisdiction could further impair a state's effort to affect an important policy dealing with a matter of purely local interest. The integrity of state court decisions and processes by which those courts compel compliance therewith is extremely important to the States." *Id.* at 729.

Plaintiff's attempt to recast its own common law tort claim into constitutional crisis through the use of 42 U.S.C. § 1983 is no more than an effort to pour old wine into a new vessel. But this Court is confident that the State Court is just as competent as we at telling wine from vinegar. If Plaintiff has a valid claim the Maryland Court of Appeals is quite capable of evaluating it. "The Federal Courts do not review State Court civil proceedings under the guise of the Civil Rights Act." *Fortune v. Mulherrin,* 533 F.2d 21, 22 (1st Cir.1976). If a

federal forum is ultimately needed then the Supreme Court stands ready after the Maryland Appeals Court has its say. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 483, 103 S.Ct. 1303, 1315, 75 L.Ed.2d 206 (1983) ("United States District Court has no authority to review final judgments of a state court in judicial proceedings"); *Leonard v. Suthard,* 927 F.2d 168 (4th Cir.1991).

### D. Public Policy

Promoting public policy is "preserving the status ante litem until the merits of a serious controversy can be fully considered by a trial court." *Blackwelder Furniture Co.,* 550 F.2d at 195–97. When weighed against this standard, denying the injunction is the only course of action this Court can take. If granted the injunction could cause irreparable damage to the state's ability to manage its judicial system, while the Plaintiff still gets his day in court.

### II. *Conclusion*

For the reasons stated herein, Plaintiff's Motion for a Preliminary Injunction is hereby denied. A separate Order shall issue.