Marilyn MANDEL;  Barbara P. Bennett;
Arthur R. Spencer;  Robert F. Crawford,
Plaintiffs–Appellants,

v.

George F. ALLEN, Governor, in his offi-
cial capacity as Governor of the Com-
monwealth of Virginia;  Jay Timmons;
Michael Thomas;  Robert T. Skunda;
Kay Cole James;  Charles E. James, Sr.;
Theron J. Bell;  Ronald C. Gordon, in
their individual and official capacities;
William E. Landslide, in his official ca-
pacity as the Comptroller of Virginia,
Defendants–Appellees.

No. 95–2399.

United States Court of Appeals,
Fourth Circuit.

Argued March 4, 1996.

Decided April 17, 1996.

**ARGUED:** Carolyn P. Carpenter, Carpenter, Woodward & Elder, P.C., Richmond, Virginia, for Appellants. Catherine Currin Hammond, Deputy Attorney General, Office of the Attorney General, Richmond, Virginia, for Appellees. **ON BRIEF:** Carol Dois Woodward, Carpenter, Woodward & Elder, P.C., Richmond, Virginia; Eileen N. Wagner, Eileen N. Wagner, P.C., Richmond, Virginia, for Appellants. James S. Gilmore, III, Attorney General of Virginia, Neil A.G. McPhie, Senior Assistant Attorney General, Peter R. Messitt, Senior Assistant Attorney General, Office of the Attorney General, Richmond, Virginia, for Appellees.

Before WILKINSON, Chief Judge, and HALL and WILKINS, Circuit Judges.

Affirmed by published opinion. Chief Judge WILKINSON wrote the opinion, in which Judge HALL and Judge WILKINS joined.

## OPINION

WILKINSON, Chief Judge:

Appellants are current and former Virginia state employees whose positions were reclassified or abolished as a result of recent efforts by the Governor of Virginia to reduce the size of state government. Appellants contend that Virginia law confers a property interest in an employee's classification as well as in continued employment. We disagree. Under Virginia law, appellants had no legitimate entitlement, and thus no property interest, either to a particular classification or to employment per se. A state's elected officials must be afforded discretion to carry out the wishes of the electorate, and this duty necessarily includes the option of decreasing the size and cost of government.

### I.

In November of 1993, George F. Allen was elected Governor of Virginia. One of his campaign themes was to reduce the size and cost of state government. In June of 1994, Governor Allen ordered the cabinet secretaries to abolish "duplicative" or "unnecessary" positions in their respective agencies.[1] Three of the appellants in this case had their positions abolished as a result of Governor Allen's downsizing efforts: Marilyn Mandel, a program manager in The Department of Labor and Industry; Arthur R. Spencer, a supervisor in The Department of Rehabilitative Services; and Barbara P. Bennett, a program supervisor in The Department of Rehabilitative Services.

The downsizing also involved substantial reorganization. The fourth appellant in this case, Robert F. Crawford, a computer systems engineer, was temporarily ordered to report directly to the agency head of The Department of Rehabilitative Services. Before Mandel's position was abolished, she also was required to report directly to her agency head at Labor and Industry. During 1994, the fact that an employee reported directly to an agency head automatically changed the employee's classification and exempted that employee from the protections afforded by the Virginia Personnel Act ("VPA"), including the right to file grievances for various employment decisions. *See* Va.Code § 2.1–116(A)(16) (1994) (subsequently amended by Va.Code § 2.1–116 (1995)).

Appellants filed suit in state court, claiming a property interest in their former classifications and positions. Mandel and Crawford challenged the reassignments that resulted in their loss of grievance rights under the VPA. Mandel, Bennett, and Spencer contested the elimination of their positions. Appellees subsequently removed this action to the Eastern District of Virginia. On June 16, 1995, the district court entered an order granting appellees' motion for summary judgment. This appeal ensued.[2]

---

1. There is no evidence that this downsizing of Virginia's government was motivated by any illegitimate consideration. There was no indication that employees were terminated because of their race or sex or because they were members of a particular political party.

2. Appellants raise a number of claims that can be addressed briefly. First, appellants contend that the district court erred by not abstaining from the exercise of its jurisdiction. We disagree. The concerns presented in cases such as *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), are lacking here because Virginia sought the federal adjudication of this controver-

## II.

### A.

■ Mandel and Crawford contend that they were entitled to due process of law before the state could alter their employment classifications and deprive them of their grievance rights. Virginia's state employment scheme distinguishes between employees subject to the Virginia Personnel Act ("classified employees") and those who are not ("exempt employees"). Classified employees have the right to challenge various employment decisions: "disciplinary actions," "discrimination on the basis of race, color, creed, political affiliation, age, disability, national origin or sex," and "acts of retaliation." Va.Code § 2.1–114.5:1(A) (1994) (subsequently amended by Va.Code § 2.1–116.06(A) (1995)).[3] Exempt employees, on the other hand, are not afforded the opportunity to file such grievances. Both Mandel and Crawford were classified employees prior to the 1994 reorganizations. After the reorganizations, however, Mandel and Crawford "report[ed] directly to [an] agency head," and thus became exempt from the protections afforded by the VPA. Va.Code § 2.1–116(A) (1994).

■ In order to state a due process claim, appellants "must first demonstrate that [they] possess[ ] a 'cognizable property interest, rooted in state law' in the lost benefit." *Biser v. Town of Bel Air,* 991 F.2d 100, 103–04 (4th Cir.), *cert. denied* —— U.S. ——, 114 S.Ct. 182, 126 L.Ed.2d 141 (1993) (quoting

*Scott v. Greenville County,* 716 F.2d 1409, 1418 (4th Cir.1983)). "A property interest requires more than a 'unilateral expectation' ... [I]nstead, there must be a 'legitimate claim of entitlement.'" *Id.* at 104 (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)).

Nowhere, however, does the Virginia Code indicate that a state employee has any "legitimate claim of entitlement" to continued employment at a particular classification. In fact, the Virginia Code is unambiguous in its denial of any such entitlement. First, the VPA provides that Virginia "reserves the exclusive right to manage the affairs and operations of state government." Va.Code § 2.1–114.5:1(B) (1994). Next, the VPA prohibits grievances regarding the "establishment and revision of ... position classifications or general benefits." *Id.* Finally, the VPA prohibits employee grievances of certain executive decisions that may change an employee's classification: "promotion, transfer, [and] assignment [of] employees within the agency." *Id.* Thus, regardless of how one might categorize appellants' changes in classification, the VPA provides no remedy.

Moreover, the Virginia Code grants the Governor broad discretion over personnel matters. Section 2.1–113 of the Virginia Code observes that "[t]he Governor shall be the Chief Personnel Officer of the Commonwealth," and Virginia Code § 2.1–114.2 grants the Governor power to:

> (i) establishment and revision of wages or salaries, position classifications or general benefits; (ii) work activity accepted by the employee as a condition of employment or ... which may reasonably be expected to be part of the job content; (iii) the contents of ordinances [and] statutes ...; (iv) failure to promote ... (v) the methods, means and personnel by which such work activities are to be carried on; (vi) ... termination, layoff, demotion, or suspension from duties because of lack of work, reduction in work force, or job abolition; (vii) the hiring, promotion, transfer, assignment and retention of employees within the agency; and (viii) the relief of employees from duties of the agency in emergencies.
>
> Va.Code § 2.1–114.5:1(B) (1994) (subsequently amended by Va.Code § 2.1–116.06(C) (1995)).

---

sy by removing this case to federal court. Its state interests have therefore not been infringed. Second, Mandel, Bennett, and Spencer contend that Virginia did not adequately follow state layoff policies as set forth in the *Department of Personnel and Training Policies and Procedures Manual.* The district court, however, found that it did, and we see no reason to disturb its conclusion. Third, while appellants allege the retroactive application of state law, the district court correctly applied the statutes that were in effect at the time of the contested employment actions. Finally, we find that federal and Virginia due process protections are coterminous here, and thus, for the same reasons that appellants' federal due process claims fail, their state claims do as well.

**3.** Yet the VPA's grievance provision is not unlimited. The statute specifically prohibits employee grievances regarding the:

Establish and maintain a classification plan for the service of the Commonwealth, and from time to time, make such amendments thereto as may be necessary. The classification plan shall provide for the grouping of all positions in classes based upon the[ir] respective duties, authority, and responsibilities.

The Virginia Code even specifically delegated to the Governor's Secretary the *"final authority* in determining on an ongoing basis the officers and employees *exempted"* by virtue of their reporting directly to an agency head. Va.Code § 2.1–116(A)(16) (1994) (emphasis added). Here, the reassignment of Mandel and Crawford was entirely within the Governor's statutory discretion.

In short, Virginia law specifically grants state officials the power to take actions that directly or indirectly cause changes in the classification status of state employees. Accordingly, appellants possessed no entitlement and thus no property right to a continued classification. *See Goldsmith v. Mayor and City Council of Baltimore,* 845 F.2d 61, 64–65 (4th Cir.1988) (quoting *Higginbotham v. Baton Rouge,* 306 U.S. 535, 538, 59 S.Ct. 705, 706, 83 L.Ed. 968 (1939)) ("the legislative power of a State except so far as restrained by its own constitution, is at all times absolute with respect to all offices within its reach. It may at its pleasure create or abolish them, or modify their duties.").

### B.

■ Bennett and Spencer, who were classified employees, contend that they were entitled to due process before their positions were abolished.[4] Yet even classified employees do not have the right to grieve every adverse governmental decision. The VPA actually prohibits employees from filing grievances regarding a "reduction in work force" or a "job abolition." Va.Code § 2.1–114.5:1(B) (1994). Here, there is no doubt that appellants' jobs were abolished as a result of just such a reduction in force. Accordingly, once the Governor determined

that appellants' positions were to be eliminated during the downsizing, appellants possessed no entitlement, and thus no property right, to continued government employment.

Appellants rely on *Detweiler v. Commonwealth,* 705 F.2d 557, 559 n. 2, 560 (4th Cir.1983), for the sweeping generalization that "continued state government employment" is accorded special status under the United States Constitution. *Detweiler's* holding that Virginia state employees are entitled to grievance proceedings, however, is, of course, limited to *grievable* employment actions, such as the disciplining of Detweiler for "failing to follow [a] supervisor's instructions." *Id.* at 559 n. 3; *see also Garraghty v. Commonwealth,* 52 F.3d 1274 (4th Cir.1995) (discharged for grievable action); Va.Code § 2.1–114.5:1(A)(i) (1994). *Detweiler* specifically acknowledges the "distinction between disciplinary discharges and discharges for reduction in work force" and does not recognize any property right when the employment action is "nongrievable." 705 F.2d at 560. As the court observed, an employee "may be discharged ... 'because of lack of work, reduction in work force, or job abolition.'" *Id.* at 559 n. 2. Thus, *Detweiler* is consistent with our holding here that no property right inheres when employees are dismissed for "nongrievable" circumstances such as "reduction in work force" and "job abolition."

### C.

The reason why Virginia has failed to create a property right in such aspects of state employment is obvious: doing so would paralyze the democratic process. As this court explained in *Goldsmith:*

[P]ublic offices are created to meet the needs of the people, and when such need ceases to exist, there is no obligation or necessity to continue a useless office.

845 F.2d at 65, n. 2 (quoting 63A. Am.Jur.2d *Public Officers and Employees* § 31).

■ Nonetheless, appellants seek to have the federal courts restrict Virginia's right to

---

4. If Mandel had been a classified employee, her position would have been identical to that of Bennett and Spencer.

regulate the number and type of state employees in its service. They assert that once a state position is created, it is unconstitutional to subsequently alter or abolish that position without an individualized hearing. Our Constitution, however, embodies no such federal constraint on the ability of states to remodel their work forces or restructure their governments. " 'The determination that a position should be abolished for reasons of efficiency and economy is solely within the judgment and discretion of the governing authority in whom the power to eliminate the office is vested.' " *Goldsmith*, 845 F.2d at 65, n. 2 (quoting 63A. Am.Jur.2d *Public Officers and Employees* § 31). Thus, elected officials may expand or contract the overall size of government, and create or eliminate its components as the times and the voters demand.

### III.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED.*