NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0792n.06
Filed: October 24, 2006

No. 05-6136

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| STEPHEN L. UPSHAW, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Middle |
| METROPOLITAN NASHVILLE AIRPORT | ) | District of Tennessee |
| AUTHORITY; PAUL REGALADO; and IFTIKHAR | ) | |
| AHMAD, | ) | |
| | ) | |
| Defendants-Appellees. | | |

Before:     BOGGS, Chief Judge; MARTIN, Circuit Judge; and OLIVER, District Judge.[*]

PER CURIAM. Stephen Upshaw, a former employee of the Metropolitan Nashville Airport Authority ("MNAA"), brought suit for wrongful discharge under state law, and for deprivation of due process and equal protection of the laws under 42 U.S.C. § 1983 and § 1985. Upshaw alleges that the elimination of his position as part of an airport reorganization was a "sham" designed to strip him of his civil-service protections and improperly terminate him without cause. The district court granted summary judgment in favor of the defendants, and Upshaw now appeals the dismissal of his § 1983 claim. We affirm the district court's order.

**I**

---

[*]The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

No. 05-6136
Upshaw v. MNAA, et al.

Pursuant to Tennessee statute, the MNAA is operated by a Board of Commissioners under its own civil service plan, the Personnel Management Plan ("PMP"), which was adopted under its bylaws. Tenn. Code Ann. § 42-4-110(a). Tennessee statute mandates that certain provisions will be included in the PMP, including a provision for "[s]uspensions, demotions or discharge of employees for cause only with the right of notice and review" and for "[r]eview by the board, or its designee . . . , at the request of the employee in question and after notice and public hearing of disciplinary actions, including . . . discharge of any employee." *Id.* § 42-4-110(a)(6), (11). The statute also permits the PMP to make certain positions exempt from the civil-service protections of the plan. *Id.* at § 42-4-110(b).

The PMP itself specifies that "[t]he Authority reserves the right and management prerogative to assign and control its work forces. The President [of the MNAA] shall staff the Authority at the level which makes appropriate, economical, and effective allocation of work between Authority employees and independent contract services," and provides for implementing the statutorily-permitted exemptions from the plan. Among the provisions dealing with employee rights, the PMP specifies that "[e]mployees subject to a reduction-in-force will receive notification of such action at least two weeks prior to the effective date." Regarding employee disciplinary actions and terminations, the PMP provides that "[n]o employee shall be the subject of a disciplinary action without cause," and specifies rules for disciplinary procedures. In cases involving potential demotion or discharge, the PMP provides that the hearing be held by the President. The PMP requires written notification of the hearing's outcome within ten days, which must advise the employee of the right to appeal "discharges, demotions and suspensions in excess of five (5) days"

- 2 -

to the MNAA Board of Commissioners, who are required to hear the appeal within 90 days of the final decision or refer the matter to an administrative law judge.

In November 2002, roughly a year after initiating a reorganization of the MNAA, President Paul Regalado hired Iftikhar Ahmad as Vice President in charge of the Planning, Design, and Construction department ("PDC"), and requested his recommendations for the reorganization of that department. Among Mr. Ahmad's recommendations was the elimination of the two Airport Engineer positions–one of which was held by Upshaw–and the Airport Architect position, and the creation of several new positions within PDC, including Project Engineer for Construction, which, unlike the Airport Engineer positions, would require Professional Engineer ("P.E.") licensing, and would be exempted from the PMP's civil-service provisions.

In December 2002, Ahmad met with Upshaw and Al Cope, the other Airport Engineer, to discuss job performance issues, and presented them with a letter of reprimand; shortly afterwards Upshaw left work on paid medical leave, on which he remained until his termination. In January 2003, he was informed of the decision to eliminate his position, and was offered a one-year contract for one of the new Project Engineer positions, on the condition that he obtain a P.E. license during that period, at MNAA's expense. After a number of exchanges, Upshaw ultimately declined the offer, and Mr. Regalado sent him a "Notice of Intent to Terminate pursuant to MNAA's Personnel Management Plan," explaining that he was being terminated because his position had been eliminated and he had declined the new position. The letter informed Upshaw of his right to appeal the decision in a hearing before Regalado, which Upshaw requested and received. After the hearing, Regalado concluded that Upshaw's termination was based on the elimination of his position as part

of the PDC reorganization. Upshaw approached the MNAA Board of Commissioners and its chairman to request a hearing on Regalado's decision, but was informed that he was not entitled to further appeal.

Upshaw filed an action against MNAA, Mr. Regalado, and Mr. Ahmad, alleging denial of his due process rights "by terminating him in direct contravention of his rights as a civil service employee," in violation of 42 U.S.C. § 1983; conspiracy to deprive him of equal protection under the law in violation of 42 U.S.C. § 1985; and wrongful discharge under Tennessee law. The district court granted the defendants' motion for summary judgment, dismissing the § 1983 and § 1985 claims with prejudice and dismissing the state law claims without prejudice, for lack of jurisdiction. Upshaw now appeals his § 1983 claim.[1]

## II

This court reviews a grant of summary judgment *de novo*. *Turner v. City of Taylor*, 412 F.3d 629, 637 (6th Cir. 2005). In evaluating a grant of summary judgment, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

---

[1]Upshaw asserts in his brief that "[t]his is a section 1983 and 1985(3) case," but makes no further reference to his § 1985 claim, much less develop an argument in support of it. Accordingly, we deem the § 1985 claim waived. *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005).

**III**

In order to sustain his § 1983 claim for deprivation of due process, Upshaw must establish that he had a constitutionally protected property interest and that he was deprived of the interest without adequate process. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576 (1972). This court has observed that "[p]roperty interests do not derive from the Constitution, but rather are created and defined by 'existing rules or understandings that stem from independent sources such as state law . . . .'" *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) (quoting *Roth*, 408 U.S. at 577). A civil-service classification system, created under state statute, that provides for termination only with cause creates such a constitutionally protected property interest. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).

**A**

The parties do not dispute that Upshaw's Airport Engineer position was classified under the MNAA's PMP, created pursuant to Tennessee statute, and do not appear to dispute that, had Upshaw been terminated for cause, the property interest thus created would have entitled him to due process. However, the MNAA claims that, because Upshaw's position was eliminated as part of a reorganization of airport personnel, the due process requirements that would apply in a termination for cause do not apply here. This court has not specifically addressed the extent–if any–of the process due a classified employee whose position is eliminated. A number of other jurisdictions have recognized a general "reorganization exception" to civil service-derived due process requirements, rooted in public policy considerations. *See, e.g., Misek v. City of Chicago,* 783 F.2d 98, 101 (7th Cir. 1986); *Duffy v. Sarault*, 892 F.2d 139, 147 (1st Cir. 1995); *Hartman v. City of*

*Providence*, 636 F. Supp. 1395, 1410 (D.R.I. 1986) (collecting cases). Courts have noted, for example, that where an employee's termination is unrelated to his job performance, any kind of process meant to evaluate that performance would be superfluous. *Digiacinto v. Harford County, Md.*, 818 F. Supp. 903, 906 (D. Md. 1993). Others have noted that requiring due process in the context of a reorganization would amount to an unreasonable hindrance for government entities seeking to adapt their staffing needs to changing conditions. *See Goldsmith v. Mayor & City Council of Baltimore*, 845 F.2d 61, 65 (4th Cir. 1988). This case, however, does not require us to consider whether a general reorganization exception permits Upshaw's termination without due process: the nature of the specific property right that Upshaw enjoyed in his position did not extend to protection from elimination of his position in the context of a reorganization.

Although the Airport's PMP and the state law pursuant to which it was implemented vested Upshaw with a property interest in his position, its precise nature must be determined by reference to the instruments that created it. *See, e.g.*, *Silberstein*, 440 F.3d at 311. Here, the terms of the PMP and state law do nothing to suggest that Upshaw's property interest extended beyond protection from termination for cause without due process. First, state law specifies that "suspensions, demotions or discharge"–all of which the statute characterizes as "disciplinary actions"–be only for cause, and only after notice and review. Tenn. Code Ann. § 42-4-110(a)(6), (11). Second, the PMP itself specifies the responsibility of the President to assign the MNAA's work force and staff it at the appropriate level, and provides that "[e]mployees subject to a reduction-in-force will receive notification of such action at least two weeks prior to the effective date." The effect of these provisions is to create a property interest relating specifically to disciplinary actions; in the case of

termination as a result of reorganization or reduction in force, the PMP establishes no rights beyond prior notice, receipt of which Upshaw does not dispute. On its face, in other words, the civil service plan that created Upshaw's property interest explicitly contemplated the possibility that positions would be eliminated without necessitating the due process protections that discharge for cause requires. *See Hartman*, 636 F. Supp. at 1408-09 (noting that relevant civil-service provisions only addressed "dismissal," and thus "at best, [created] a property interest in the job so long as the job existed.") To the extent, then, that Upshaw's position was eliminated as part of a legitimate reorganization, MNAA's refusal to entertain an appeal of his pre-termination hearing–which the PMP required only where the termination was for cause–cannot constitute a denial of due process. The right to appeal a decision to eliminate a position (even if MNAA offered such a hearing) was never a part of Upshaw's property interest.

**B**

Upshaw contends, however, that the reorganization was a mere "sham," a pretext designed to discharge him without the process that should have been due. Upshaw may be correct that a "sham" reorganization should not protect an employer from fulfilling what would otherwise be its due process obligation: "To hold otherwise would allow government officials to cry 'reorganization' in order to circumvent the constitutional and statutory protections guaranteed . . . employees." *Misek*, 783 F.2d at 101. However, Upshaw has failed to show that the question of whether the reorganization was a sham involves any genuine issue of material fact. On the contrary, the record is clear that, on the evidence Upshaw has offered, no reasonable jury could conclude that the reorganization was mere pretext.

Upshaw does not dispute that Regalado had begun a restructuring of the MNAA over a year before his position was eliminated, and that the stated purpose of the reorganization was streamlining and increased cost-effectiveness. He does not dispute that MNAA could include a P.E. license among the job requirements for the new Project Engineer for Construction positions, nor that it could exempt the new positions from civil service classification. His only substantive disputes appear to concern the reasons for which Regalado claimed MNAA was eliminating his position.

During Upshaw's pre-termination hearing, Regalado indicated that MNAA wanted to make the change in order to secure funds more easily for the salaries of the new positions from federal grant programs, and to eliminate the cost of consultants required by not having licensed engineers in-house. In an attempt to impeach these assertions, Upshaw offers the deposition testimony of MNAA's Chief Financial Officer, Doug Wolfe, that his Airport Engineer position could have been federally funded, and the testimony of Regalado that, even after the creation of the new Project Engineer positions, the airport had not eliminated its use of consultants. Thus, Upshaw concludes, Regalado's asserted motivations for eliminating his position were merely pretextual. More generally, Upshaw now claims that the fact that the number of MNAA employees (and PDC employees in particular) has increased since his termination undermines Regalado's claim that the reorganization as a whole was undertaken to streamline operations (though in the proceedings below he conceded this motivation, Plaintiff's Response to Defendants' Statement of Undisputed Material

No. 05-6136
Upshaw v. MNAA, et al.

Facts ¶ 11, JA 91). Finally, Upshaw suggests that his December 2002 letter of reprimand points to the actual foundation for MNAA's elimination of his position.[2]

These assertions do not amount, as a matter of law, to a genuine dispute of material fact requiring resolution at trial. At most, Upshaw's assertions serve to cast doubt on the *quality* of the reorganization plan–the likelihood that it would achieve the results MNAA claimed to hope for. Without offering any evidence to provide affirmative support for the notion that MNAA's reorganization was merely a bad-faith effort to discharge him, Upshaw cannot prove, on the basis of this asserted ineffectiveness, that the entire effort was a sham. *See, e.g.*, *Mandel v. Allen*, 889 F. Supp. 857, 875 (E.D. Va. 1995) ("Neither federal nor state law prohibits a state from a good faith effort to conduct its affairs more efficiently, and the state is not required to justify such efforts with proof that the efficiencies are working."). Furthermore, the existence of a prior disciplinary action against Upshaw, cannot, in itself, serve to prove that the entire process was a subterfuge designed to eliminate him; "[o]therwise, the paradoxical result would follow that a general reorganization could be challenged by anyone with a questionable work record (but not by a person whose record is beyond reproach)." *Digiacinto*, 818 F. Supp. at 906.

---

[2]Upshaw appears to claim, on appeal, that he was deprived of due process in December 2002 as well as upon his termination in April 2003, insofar as the letter of reprimand was not preceded by the notice required by the PMP. Upshaw, however, failed to assert this claim in the proceedings below, and we therefore need not consider it here. *Barner v. Pilkington North America, Inc.*, 399 F.3d 745, 749 (6th Cir. 2005). In any case, it is well established that constitutionally required due process is not equivalent to the process required by state law, *Loudermill*, 470 U.S. at 541, and without a showing that the December 2002 proceeding was part of his discharge, Upshaw cannot demonstrate that the letter of reprimand amounted to a deprivation of any property interest that would entitle him to due process.

Upshaw has offered no evidence to support the notion that MNAA's decision was "person directed" rather than "position directed," beyond the existence of a prior disciplinary action. *See Hartman*, 636 F. Supp. at 1410. This does not provide a basis from which a reasonable juror could conclude that the MNAA's actions were pretextual; indeed, the fact that MNAA offered Upshaw a contract for the new Project Engineer position, and offered to pay his licensing expenses, renders highly implausible the notion that this was all an elaborate ruse to terminate him. In evaluating a motion for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff," and the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Liberty Lobby*, 477 U.S. at 252 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Upshaw has failed to meet this burden. Accordingly, the order of the district court is **AFFIRMED**.