**Larry SETTLE, Plaintiff,**

v.

**S.W. RODGERS, CO., INC., Defendant.**

**Civil Action No. 98–125–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

March 24, 1998.

---

Michele S. Bellizaire, Manassas, VA, for Plaintiff.

Joseph H. Kasimer, Lesa L. Byrum, Kasimer & Ittig, P.C., Falls Church, VA, for Defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

Plaintiff's three-count complaint alleging discrimination and retaliation under the Americans with Disabilities Act ("ADA") of 1990, 42 U.S.C. § 12101 *et seq.*, and the Family and Medical Leave Act ("FMLA") of 1993, 29 U.S.C. § 2601 *et seq.*, comes before the Court on defendant's motion to dismiss. Specifically at issue are the following questions:

(1) whether plaintiff has adequately alleged a "disability" under the ADA;

(2) whether plaintiff's claims under the FMLA are timely;

(3) whether plaintiff's claims of retaliatory discharge under the ADA and the FMLA are precluded by the finding of the Virginia Workers Compensation Commission that plaintiff was discharged due to excessive personal telephone calls; and

(4) whether plaintiff may claim punitive damages and mental distress damages under the FMLA.

## I.[1]

Plaintiff is a diesel mechanic. He began working for defendant, a Virginia corporation, in 1986. His job rebuilding diesel engines required long hours and often involved strenuous lifting. In general, plaintiff was required to work eleven-hour days, Monday through Friday and occasionally on Saturday, as well.

On June 20, 1994, plaintiff severely twisted his shoulder in a work-related accident. His attempts to resume his work were accompanied by extreme pain and discomfort. So, within a few days of the incident, plaintiff consulted Dr. Bartley Howick, an orthopedic surgeon who diagnosed the injury as a rotator cuff tear and placed plaintiff on a home-based physical therapy program. Dr. Howick also limited plaintiff to light duty, with specific instructions to avoid lifting or pulling more than five pounds of weight. A copy of these instructions and a copy of the doctor's diagnosis were sent to defendant.

Despite Dr. Howick's instructions, defendant expected plaintiff to resume his normal work schedule. Indeed, plaintiff's duties after the accident remained unchanged; he was required to lift engines weighing 50 to 60 pounds; he was required to pull a torque wrench applying 300 to 350 pounds of torque; and he was expected to continue to work at his pre-injury pace. In short, defendant's demands placed a level of stress on plaintiff's shoulder far beyond that prescribed by Dr. Howick.

By January 1995, plaintiff was continuing to experience severe pain, weakness, stiffness, and limited motion in his right shoulder, all of which impaired his ability to perform his work duties, as well as non-work activities. After returning to Dr. Howick for a second evaluation, plaintiff underwent arthroscopic surgery on his shoulder on February 21, 1995. Following surgery, Dr. Howick placed plaintiff on a light activity regime that prevented his return to work for a period of six weeks. Plaintiff complied with this regime and did not return to work until March 20, 1995. And when he did return to work, he did so subject to Dr. Howick's orders limiting him to light duty, once again including a specific prohibition against lifting more than five pounds. Dr. Howick also prescribed that plaintiff attend three one-hour physical therapy sessions per week.

As had occurred previously, plaintiff found on his return to work on March 20, 1998, that defendant's requirements precluded compliance with Dr. Howick's light-work order. Although a young apprentice, T.W. Nylon, was assigned to work with plaintiff, this arrangement required plaintiff to train Nylon, often forcing him to perform tasks beyond the scope of his doctor's orders. Further, Nylon worked only eight-hour shifts, leaving plaintiff to work alone for approximately three hours each day. Despite his limitation, plaintiff was constantly pressured to perform at or above the level he maintained prior to his injury, and he was regularly berated for working too slowly. On occasion, plaintiff was chastised for taking time off to attend his physical therapy sessions. On May 12, 1995, at the end of the day, plaintiff was fired from his job without explanation.

Following his discharge, plaintiff filed a Workers Compensation claim for disability benefits arising out of the injury to his shoulder.[2] At issue before the Workers Compensation Commission ("Commission") was whether plaintiff was terminated for just cause, and hence, not entitled to disability benefits. By opinion dated June 28, 1996, the Commission found that plaintiff had been discharged on the basis of "the excessive personal telephone calls he received," but that the termination was not "justified" since plaintiff had, at best, only limited control

---

1. The facts stated here are those alleged in the complaint, for on a motion to dismiss, the material facts alleged in the complaint are taken as true, solely for the disposition of the motion. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

2. Plaintiff's complaint does not, in fact, mention his claim for disability benefits. Rather, it is defendant's motion to dismiss that discusses plaintiff's claim, and the subsequent findings of the Workers Compensation Commission.

over the incoming phone calls.[3] Nevertheless, plaintiff was denied disability benefits for the period May 10 through November 19, 1995, because he had obtained a comparable position for this period with the Prince William Construction Company. This, in the Commission's opinion, precluded his receipt of benefits. Plaintiff did not appeal the Commission's decision. On November 20, 1995, a second operation on plaintiff's shoulder was required.

Plaintiff filed this three-count complaint on January 28, 1998, following a timely filed charge of discrimination with the EEOC and the Prince William County Human Rights Commission, and the receipt of a right to sue letter. Plaintiff's complaint alleges;

 (1) unlawful discrimination on the basis of a disability in violation of the ADA;

 (2) willful interference with plaintiff's statutory rights under the FMLA; and

 (3) unlawful retaliation under both the ADA and the FMLA.

Further, plaintiff's complaint prays for compensatory and punitive damages to redress the alleged deprivation of his rights.

## II.

The standard to be applied in deciding a motion to dismiss is well established. Dismissal for failure to state a claim under Fed.R.Civ.P. 12(b)(6) is only appropriate where, construing the allegations in the light most favorable to the plaintiff and assuming the facts alleged to be true, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Hishon,* 467 U.S. at 73; *Revene v. Charles County Comm'rs,* 882 F.2d 870, 872 (4th Cir.1989). Yet, so long as the plaintiff colorably states facts which, if proven, would entitle him to relief, a motion to dismiss

should not be granted. *Adams v. Bain,* 697 F.2d 1213, 1216 (4th Cir.1982).

## III.

The ADA makes it unlawful to "discriminate against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination under the ADA, plaintiff must prove that he (i) has a disability, (ii) is otherwise qualified for the job, and (iii) has experienced some adverse employment action as a result of his disability. *See Halperin v. Abacus Technology Corp.,* 128 F.3d 191, 197 (4th Cir.1997). The threshold issue, then, is whether plaintiff has alleged a "disability" cognizable under the ADA, which the Act defines in part as any "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A).[4] The major life activities covered by the ADA include functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, working, sitting, standing, lifting and reaching. *See Williams v. Channel Master Satellite Systems, Inc.,* 101 F.3d 346, 349 (4th Cir.1996) (citing 29 C.F.R. § 1630.2(i); 29 C.F.R. Pt. 1630, App. § 1630.2(i)). Further, an impairment is one that is substantially limiting when it "significantly restrict[s] an individual's ability to perform a major life activity." *Halperin,* 128 F.3d at 199. In determining whether an impairment is substantially limiting, courts may consider the "nature and severity of the impairment, its duration or expected duration, and any permanent or long term impact." *Id.*

In support of its motion to dismiss, defendant suggests that, as a matter of law, plaintiff's shoulder injury cannot constitute a

---

**3.** Specifically, the Commission stated that;

 [w]e find that the [plaintiff] was discharged because of the excessive personal telephone calls he received, primarily from his former wife and creditors. His termination was for cause since he could have refused the calls. However, we find upon this record that the termination was not "justified" since the [plaintiff] had, at best, only limited control over incoming calls.

**4.** The complete ADA definition is as follows:

 (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

 (B) a record of such an impairment; or

 (C) being regarded as having such an impairment.

Only (A) appears to be pertinent here.

"disability" under the ADA. Specifically, defendant contends that a torn rotator cuff, while potentially limiting plaintiff's use of his arm, and his ability to perform certain duties, is not, as a matter of law, an impairment that "substantially limits" a major life activity. This contention is unpersuasive. Not all rotator cuff injuries are alike in their severity, extent, or effect. Some rotator cuff injuries may be so severe as to limit a person's major life activities in some respect, while others may not. Thus, ADA coverage is not foreclosed merely because the complaint identifies the disability as a rotator cuff injury. As courts have consistently and sensibly noted, the ADA's individualized focus requires a case-by-case determination of whether a particular plaintiff's particular impairment is disabling. *See Ennis v. National Ass'n of Bus. and Educ. Radio, Inc.*, 53 F.3d 55, 59 (4th Cir.1995) (finding of disability must be made on individual basis); *See also Forrisi v. Bowen*, 794 F.2d 931, 933 (4th Cir.1986) (in the context of the Rehabilitation Act, the question of who is handicapped is best suited to a case-by-case determination). In sum, a claim for ADA relief is not fatally insufficient merely because the impairment is alleged to be a rotator cuff shoulder injury.[5]

 Yet, the analysis of the complaint's sufficiency does not end here. While the allegation of a rotator cuff injury does not foreclose ADA coverage, the complaint must allege that plaintiff's impairment is disabling, *i.e.*, that it substantially limits a major life activity. *See, e.g., Homeyer v. Stanley Tulchin Assocs., Inc.*, 91 F.3d 959, 961 (7th Cir.1996); *Fedor v. Illinois Dep't of Employment Sec.*, 955 F.Supp. 891, 893 (N.D.Ill. 1996); *Sutton v. New Mexico Dep't of Children, Youth and Families*, 922 F.Supp. 516, 518 (D.N.M.1996). Here, although plaintiff's complaint adequately alleges that he suffers from an impairment,[6] it is devoid of any allegation that his impairment is one that affects a major life activity, much less that it is substantially limiting. The complaint, read generously, arguably suggests that plaintiff's condition may affect the major life activities of working and lifting. Thus, his shoulder condition and the resulting surgery rendered plaintiff unable to work for six weeks, after which he was restricted to light duty for an unspecified period. Yet, no inference of severity, permanence, or long-term impact, and thus substantial limitation, can be gleaned from these allegations.[7] Thus, even drawing all reasonable inferences in plaintiff's favor, plaintiff's complaint fails to state a claim for discrimination under the ADA. Accordingly, Count I of the complaint is dismissed without prejudice, and plaintiff is granted leave to file an amended complaint consistent with this opinion.[8]

---

5. Defendant's cited authority is not to the contrary; those decisions do not hold that shoulder injuries are per se not disabling under the ADA. Rather, they each conclude, on the basis of a summary judgment record, that a particular claimant's particular shoulder injury is not a disabling impairment. *See, e.g., Freund v. Lockheed Missiles and Space Co., Inc.*, 930 F.Supp. 613, 618 (S.D.Ga.1996) (plaintiff failed to establish at summary judgment that her shoulder injury substantially limited a major life activity); *Otis v. Canadian Valley–Reeves Meat Co.*, 884 F.Supp. 446, 449 (W.D.Okla.1994) (same); *see also Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726–27 (5th Cir.1995) (plaintiff failed to establish that a gunshot wound to her arm substantially limited a major life activity).

6. The EEOC regulations broadly define "physical impairment" as including any physiological condition affecting the neurological and musculoskeletal systems. *See* 29 C.F.R. § 1630.2(h)(1). The EEOC regulations, "while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

7. Plaintiff's counsel noted at oral argument that omission of the requisite allegations was inadvertent and that there exists a good faith basis under Fed.R.Civ.P. 11 to amend the complaint in this regard.

8. On the same basis, defendant argues that plaintiff's claim of retaliatory discharge under the ADA (Count III) must be dismissed. Yet, plaintiff need not establish that he has a "disability" to maintain a claim for retaliation under the ADA. *See Krouse v. American Sterilizer Co.*, 126 F.3d 494, 502 (3rd Cir.1997). By its own terms, the ADA's retaliation provision seeks to protect all individuals who assist in the Act's enforcement, and who may thereby draw the ire of employers. *See* 42 U.S.C. § 12203(a). To establish a prima facie case of retaliation, plaintiff need only prove that (1) he engaged in protected activity, (2) his employer took an adverse employment action

## IV.

The Family and Medical Leave Act, which was designed to "balance the demands of the workplace with the needs of families," [9] empowers employees to take reasonable leave from work for medical reasons without fear of reprisal. Specifically, the Act entitles eligible employees to a total of twelve workweeks of leave during any twelve-month period, which may be taken intermittently or on a reduced leave schedule when medically necessary. 29 U.S.C. § 2612(a) & (b).[10] The Act prohibits any attempt by employers to "interfere with, restrain, or deny" the exercise of rights guaranteed by the FMLA, and authorizes civil actions by aggrieved employees. 29 U.S.C. §§ 2615(a) & 2617(a). Such actions must generally be commenced within two years, except "[i]n the case of [an] ... action brought for a willful violation of section 2615 ... [which] may be brought within 3 years of the date of the last event constituting the alleged violation." 29 U.S.C. § 2617(c)(2). Although the FMLA does not define the term "willful," the Supreme Court, in an analogous context, has ruled that a violation of the Fair Labor Standards Act ("FLSA") is "willful" where an employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [Act]." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 130, 135, 108 S.Ct.

1677, 100 L.Ed.2d 115 (1988). And there is little doubt that this standard is equally applicable in the FMLA context. This is so because actions under the FLSA and the FMLA are governed by virtually identical statutory limitations schemes. That is, actions under the FLSA, like the FMLA, are governed by a general two-year statute of limitations period unless the alleged violation is "willful," in which case the limitations period is extended to three years. 29 U.S.C. § 255(a).[11] And, in *McLaughlin*, the Supreme Court found this FLSA standard of willfulness—a standard that requires that an employer "knew or showed reckless disregard"—to be consistent with the ordinary and plain meaning generally attributed to the term "willful." 486 U.S. at 133.

In the instant case, plaintiff's FMLA claims accrued between March 20, 1995, when he returned to work following surgery, and May 12, 1995, when he was terminated. Thus, if plaintiff's January 28, 1998 complaint purported to state claims for non-willful violations of the FMLA, those claims would be time barred. Yet, given that plaintiff's complaint specifically alleges "willful" violations of the Act, his claims are timely pursuant to 29 U.S.C. § 2617(c)(2).[12] Defendant concedes that plaintiff's claims for willful viola-

against him, and (3) a causal connection exists between the protected activity and the adverse action. *See, e.g., Harmer v. Virginia Elec. and Power Co.*, 831 F.Supp. 1300, 1308 (E.D.Va. 1993); *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 n. 8 (5th Cir.1998); *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir.1997). Plaintiff's complaint sufficiently sets forth a claim for retaliation under the ADA.

9. 29 U.S.C. § 2601(b).

10. FMLA § 2612(a)(1) defines the circumstances in which the leave is appropriate:

(1) ... an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period for one or more of the following:
(A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.
(B) Because of the placement of a son or daughter with the employee for adoption or foster care.
(C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such

spouse, son, daughter, or parent has a serious health condition.
(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

11. The limitations period for actions brought under the FLSA, and the Age Discrimination in Employment Act ("ADEA"), is determined by § 6(a) of the Portal–to–Portal Pay Act. 29 U.S.C. § 255(a).

12. Plaintiff's complaint states that defendant "willfully interfered with [plaintiff's] right to up to 12 weeks of unpaid, job protected leave by forcing [plaintiff] to take his physical therapy on his own time when he was entitled to leave, and by discharging him in retaliation for [plaintiff's] exercise of his rights as to guaranteed leave under the [FMLA]." The complaint continues that defendant, "willfully violated FMLA by interfering with [plaintiff's] rights as guaranteed under the Act and by discrimination through harassment, denying him the continued opportunity to obtain physical therapy while on duty, and ultimately by discharge."

tions of the FMLA are governed by the three-year statute of limitations period, and hence timely filed. The defendant moves, however, to dismiss the FMLA claims on the basis that plaintiff has "failed to allege any facts [sufficient to] ... support a finding of a willful violation." Yet, in the circumstances, defendant's argument is unavailing.

Rule 9(b) of the Federal Rules of Civil Procedure states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, *intent, knowledge, and other condition of mind of a person may be averred generally.*" (emphasis added). Thus, where, as here, a plaintiff sufficiently alleges facts supporting the claimed violation of the FMLA, a general averment as to willfulness should be sufficient to trigger the three-year limitations period. *See Pfister v. Allied Corp.*, 539 F.Supp. 224, 228 (S.D.N.Y.1982) (in ADEA action, plaintiff who generally avers willfulness entitled to three-year statute of limitations period); *Wanamaker v. Columbian Rope Co.*, 713 F.Supp. 533, 539–540 (N.D.N.Y.1989) (same). Indeed, were the plaintiff required to aver conditions of the mind with specificity, "it would be virtually impossible to do so without presenting all the evidence bearing on the matter at length." *Pfister*, 539 F.Supp. at 228 (citing 2 A Moore's Federal Practice [2d ed.] ¶ 9.03). Here, plaintiff properly alleges facts support-

ing his claims of interference and retaliatory termination in violation of the FMLA, and avers willfulness in a manner consistent with the requirements of Rule 9(b). Accordingly, defendant's motion to dismiss as untimely plaintiff's claims for "willful" violations of the FMLA is denied.

## V.

Next, defendant contends that plaintiff's claims of retaliatory termination under both the FMLA and the ADA are barred, based upon the preclusive effect to be given the factual findings of the Virginia Workers Compensation Commission ("Commission").[13] Specifically, following an evidentiary hearing, the Commission found that plaintiff was "discharged because of the excessive personal telephone calls he received," and that the discharge "was for cause since plaintiff could have refused the calls."[14] Yet, the Commission also found that plaintiff's termination was not "justified" since plaintiff had, at best, only limited control over the incoming phone calls. Defendant now contends that the Commission's findings preclude plaintiff from arguing here, in support of his federal claims, that he was terminated in retaliation for his exercising his rights under the ADA and the FMLA.

In appropriate circumstances, the factual findings of an administrative body, such as the Commission, should be

---

13. The Fourth Circuit has sensibly noted that defendants face a "procedural stumbling block" in asserting affirmative defenses in a Rule 12(b)(6) motion. *See Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 229 (4th Cir.1997); *Richmond, Fredericksburg, & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir.1993). Because such a motion is intended to test the legal adequacy of the complaint, not to address the merits of any affirmative defenses, a defense may generally by raised under Rule 12(b)(6) "only if it *clearly* appears on the face of the complaint." *McGraw*, 125 F.3d at 229 (emphasis in original). Otherwise, affirmative defenses such as collateral estoppel are "more properly reserved for consideration on a motion for summary judgment." *Id.*

Nevertheless, under the circumstances of the instant case, an immediate resolution of defendant's collateral estoppel defense is clearly preferable. A copy of the Commission's opinion was provided to the Court. There are no disputed issues of fact concerning plaintiff's claim for ben-

efits, or the Commission's subsequent findings of fact. Indeed, both parties briefed the issue, and plainly expected that it would be resolved. Accordingly, defendant's motion to dismiss based on the collateral estoppel effect of the Commission's finding is treated as a motion for summary judgment pursuant to Rule 56. *See* Fed.R.Civ.P. 12(b) ("[i]f, on a motion asserting the defense numbered (6) to dismiss ... matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 ..."). Though the parties were not given explicit notice that the Court would be considering the motion in accordance with Rule 56, neither party suffers any prejudice by treating it as such.

14. Plaintiff did not, apparently, allege either discrimination or retaliatory discharge at his hearing for disability benefits.

given preclusive effect in actions alleging discrimination in violation of federal rights. *See Layne v. Campbell County Dep't of Soc. Services,* 939 F.2d 217, 219–221 (4th Cir.1991); *Roberts v. County of Fairfax,* 937 F.Supp. 541, 545–46 (E.D.Va.1996). Thus, the Supreme Court has recognized on a number of occasions that "it is sound policy to apply principles of issue preclusion to the factfinding of administrative bodies acting in a judicial capacity." *University of Tennessee v. Elliott,* 478 U.S. 788, 797, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). Specifically, when a state agency acting in a judicial capacity "resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, ... federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Id.* 478 U.S. at 799. In *Layne,* the Fourth Circuit applied this sound principle to civil rights cases under 42 U.S.C. § 1983. 939 F.2d at 221 (findings of fact made by a grievance panel pursuant to the grievance procedure mandated by Virginia law given preclusive effect). And, in *Roberts,* this Court expressly found the findings of a state grievance panel to be entitled to preclusive effect in an ADA action. 937 F.Supp. at 547.

In the case at bar, it is indisputable that the Commission was acting in a judicial capacity when it resolved plaintiff's claim for disability benefits. Pursuant to the Virginia Workers' Compensation Act ("VWCA"), plaintiff's claim before the Commission provided his sole remedy regarding his shoulder injury. *See* Va.Code § 65.2–307 (excluding all other rights and remedies of the employee regarding work-related injuries). And, under the VWCA, unreviewed awards of the Commission are "conclusive and binding as to all questions of fact." Va.Code § 65.2–706; *Stenrich Group v. Jemmott,* 251 Va. 186, 467 S.E.2d 795, 798 (1996). As such, there is no doubt that the Commission's findings here are final and enforceable in Virginia. Whether they are entitled to preclusive effect in this action depends on Virginia's law of collateral estoppel. *Elliott,* 478 U.S. at 797 (federal courts give agency's fact finding the same preclusive effect to which it would be entitled in the state's courts).

Virginia law on collateral estoppel is well-settled. The doctrine "precludes parties to a prior action and their privies from litigating in a subsequent action any factual issue that actually was litigated and was essential to a valid, final judgment in the prior action." *TransDulles Center, Inc. v. Sharma,* 252 Va. 20, 472 S.E.2d 274, 275 (1996). For the doctrine to apply, then,

> the parties to the two proceedings, or their privies, must be the same; the factual issue sought to be litigated actually must have been litigated in the prior action and must have been essential to the prior judgment; and the prior action must have resulted in a valid, final judgment against the party sought to be precluded in the present action.

*Id.*

The Commission's resolution of plaintiff's claim for benefits meets most, but not all, of Virginia's requirements for collateral estoppel. Thus, this action and the matter before the Commission involve identical parties, a common factual issue, and a valid, final judgment. Yet, the Commission's finding that plaintiff was terminated for "excessive personal telephone calls" was not essential to its denial of benefits. Rather, the denial of benefits was based solely on plaintiff's acceptance of a comparable position with another employer. As the Commission was not required to make a factual finding regarding the actual basis for plaintiff's discharge, a Virginia court would not give collateral estoppel effect to that finding. It follows then, that this Commission finding is not entitled to preclusive effect in this action.

Accordingly, the Commission's finding that plaintiff was terminated based on "excessive personal telephone calls" does not preclude plaintiff from arguing that he was terminated in retaliation for his exercising his rights under the ADA and the FMLA.

## VI.

Finally, defendant moves to dismiss those portions of the complaint seeking punitive damages and damages for emotional distress under the FMLA. Because these

remedies are not allowed under the FMLA, defendant's motion is well-founded.

Section 107 of the FMLA authorizes civil actions by aggrieved employees. 29 U.S.C. § 2617(a). In addition to providing for appropriate equitable relief, fees and costs, § 2617 authorizes the recovery of damages where an employer has violated the FMLA. *Id.* Yet such recovery is expressly limited to; (1) compensatory damages equal to the amount of any wages, salary, employment benefits, or other compensation which he was denied or lost by reason of the violation; (2) interest on the compensatory damages; and, under certain circumstances, (3) liquidated damages.[15] 29 U.S.C. § 2617(a)(1)(A). Thus, by its own terms, the FMLA does not provide for either punitive damages or for damages for emotional distress. *Id.; see also McAnnally v. Wyn South Molded Prods., Inc.*, 912 F.Supp. 512, 513 (N.D.Ala. 1996). Accordingly, defendant's motion to dismiss such claims for relief is granted.

In sum, then, defendant's motion to dismiss plaintiff's claim of discrimination under the ADA is granted without prejudice, and plaintiff is granted leave to file an amended complaint consistent with this opinion. Defendant's motion to dismiss the ADA claims is denied in all other respects. As to the FMLA claims, defendant's motion is granted as to the request for punitive damages and for emotional distress damages, but denied in all other respects.

An appropriate Order has issued.

---

**15.** Unless a court is satisfied that the employer acted in good faith and reasonably believed it had complied with the FMLA, an employee is entitled to liquidated damages equal to the amount of compensatory damages plus interest. 29 U.S.C. § 2617(a)(1)(A)(iii).